**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| LORI C., | Civil Action No. 23-4369 (MAS) |
| Plaintiff, | **MEMORANDUM OPINION** |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**SHIPP, District Judge**

This matter comes before the Court upon Plaintiff Lori C.'s ("Plaintiff")[1] appeal of the final decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Plaintiff's request for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act (the "Act") and her request for Supplemental Security Income ("SSI") under Title XVI of the Act. (ECF No. 1.) The Court has jurisdiction to review this matter under 42 U.S.C. § 405(g) and reaches its decision without oral argument under Local Civil Rule 78.1(b). For the reasons below, the Commissioner is affirmed.

---

[1] The Court identifies Plaintiff by first name and last initial only. *See* D.N.J. Standing Order 2021-10.

## I.    **BACKGROUND**

In this appeal, the Court must consider whether the Administrative Law Judge's (the "ALJ") finding that Plaintiff was not disabled is supported by substantial evidence. The Court begins with the procedural posture and the ALJ's decision.

### A.    **Procedural History**

On August 30, 2021, Plaintiff filed an application for DIB and an application for SSI. (AR 17, ECF No. 5.[2]) Both applications alleged disability beginning January 7, 2019.[3] (*Id.*) Plaintiff's claim was denied both initially and on reconsideration. (*See id.* at 17, 118, 122, 128-31.) Thereafter, Plaintiff submitted a written request for a hearing before an ALJ. (*Id.* at 138-39.)

On November 2, 2022, the ALJ held an online video hearing with the parties and an impartial vocational expert. (*See id.* at 17, 37-71.) On December 1, 2022, the ALJ issued a decision denying Plaintiff's DIB and SSI applications, finding that Plaintiff was not disabled under the Act. (*Id.* at 14-36.) Plaintiff appealed the decision. (*See id.* at 7-13.)

On June 15, 2023, the Social Security Administration's Appeals Council affirmed the ALJ's decision. (*Id.* at 1-6.) On August 11, 2023, Plaintiff filed an appeal to this Court (*see generally* Compl., ECF No. 1), and on February 29, 2024, submitted her moving brief (Pl.'s Moving Br., ECF No. 7). The Commissioner filed an opposition brief on March 15, 2024 (ECF No. 9), and Plaintiff filed a reply on March 27, 2024 (ECF No. 10).

---

[2] The Administrative Record ("AR") is located at ECF No. 5. The Court will reference the relevant pages of the AR and will not reference the corresponding ECF page numbers within those files.

[3] Plaintiff listed the following conditions that limit her ability to work in her application: (1) depression; (2) anxiety; (3) bipolar I; (4) attention deficit hyperactivity disorder; (5) post-traumatic stress disorder; (6) endometriosis; (7) Reynaud's disease; (8) asthma; and (9) allergies. (Pl.'s Moving Br. 7; AR 74-75, 82-83, 248-49.) Plaintiff did not list borderline personality disorder or paranoid personality disorder.

**B.      The ALJ's Decision**

In his written decision, the ALJ concluded that Plaintiff was not disabled under the prevailing administrative regulations during the relevant period. (AR 31.) The ALJ set forth the Social Security Administration's five-step sequential analysis for determining whether an individual is disabled. (*Id.* at 18-19.) As an initial matter, the ALJ found that Plaintiff "meets the insured status requirements of the Social Security Act through September 30, 2024." (*Id.* at 20.) At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since January 7, 2019, the alleged onset date." (*Id.*)

At step two, the ALJ determined that Plaintiff had several severe impairments during the relevant period: (1) post-traumatic stress disorder ("PTSD"); (2) anxiety disorder; (3) bipolar disorder; (4) attention deficit hyperactivity disorder ("ADHD"); and (5) endometriosis. (*Id.* at 20-21.) The ALJ found that Plaintiff also had other non-severe impairments. (*Id.*) Specifically, the ALJ considered the record and Plaintiff's statements and testimony to determine that Plaintiff has physical impairments that do not result in work-related limitations, including a tongue mass or lesion, a lump or mass in breast(s), asthma, and Raynaud's disease. (*Id.*) The ALJ stated that Plaintiff's tongue mass was "pea sized," and Plaintiff "had no significant functional limitations from this impairment." (*Id.* at 20.) The ALJ further noted that examinations of Plaintiff's breast mass generally returned "benign findings" and caused "no functional limitations." (*Id.*) Regarding Plaintiff's asthma, the ALJ noted that: (1) Plaintiff has received inhalers and done "generally well;" (2) her pulmonary function testing ("PFT") in July and November 2021 were within normal limits; (3) she had never visited the emergency room or been hospitalized for the condition; and (4) albuterol "significantly improved" her asthma symptoms. (*Id.*) The ALJ also found that

Plaintiff "has not had significant limitations from or extensive treatment for Raynaud [sic] disease." (*Id.*)

Despite Plaintiff's impairments, the ALJ determined at step three that Plaintiff's impairments—specifically, Plaintiff's PTSD, anxiety disorder, bipolar disorder, ADHD, and endometriosis—did not meet or medically equate to one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, and 416.926 during the relevant period. (*Id.* at 21-24.)

The ALJ determined that Plaintiff had the residual functional capacity ("RFC")[4] to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). (*Id.* at 24.) Plaintiff, however, was:

> limited to simple tasks in a routine work environment; no more than occasional interaction with supervisors, but would be able to have frequent interaction during a 30-day training period; can work in close proximity to others, but only with brief, incidental interaction with others and no tandem job tasks requiring cooperation with other workers to complete the task; no interaction with the general public; and limited to low stress work, which is defined as routine work with no more than occasional changes in the work.

(*Id.*)

At step four, the ALJ found that Plaintiff is unable to perform past relevant work as a physical therapist. (*Id.* at 29-30.) The ALJ considered that Plaintiff was 33 years old on the alleged disability onset date, which is defined as a "younger individual" (age 18-49), and she has at least a high school education. (*Id.* at 30.) The ALJ determined that "[t]ransferability of job skills is not

---

[4] RFC is defined as "the most [an individual] can still do despite [their] limitations." 20 C.F.R. § 404.1545(a)(1); *see Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) ) ("'residual functional capacity' is defined as that which an individual is still able to do despite the limitations caused by her impairments") (citing *Hartranft v. Apfel*, 181 F.3d 358, 359 n.1 (3d Cir. 1999)). Determination of a claimant's RFC is the exclusive responsibility of the ALJ. 20 C.F.R. §§ 404.1527(e) and 404.1546(c).

material . . . because [Plaintiff] is 'not disabled,' whether or not [she] has transferable job skills." (*Id.*) Based on the aforementioned factors and Plaintiff's RFC, the ALJ determined that there are "jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (*Id.*) In doing so, the ALJ relied upon the testimony of the vocational expert, who testified that an individual of Plaintiff's age, education, work experience, and RFC would have been able to perform "requirements of representative unskilled (SVP 2) light occupations" such as: "Marker"; "Routing Clerk"; or "Photocopy-Machine Operator." (*Id.*)

At step five, the ALJ determined that Plaintiff was not under a disability, as defined in the Act, from January 7, 2019 (the alleged onset date) through the date of the ALJ's decision for the purposes of Plaintiff's DIB and SSI claims. (*Id.* at 31.)

## II.   **LEGAL STANDARD**

### A.      **Standard of Review**

When considering an appeal from the final decision of the Commissioner, the district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); *Matthews v. Apfel*, 239 F.3d 589, 592 (3d Cir. 2001). To survive judicial review, the Commissioner's decision must be supported by "substantial evidence." *Richardson v. Perales*, 402 U.S. 389, 390 (1971) (quoting 42 U.S.C. § 405(g)); *see Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson*, 402 U.S. at 401 (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In reviewing the record for substantial evidence, the Court "may not weigh the evidence or substitute [its own] conclusions for those of the fact-finder." *Rutherford v. Barnhart*,

399 F.3d 546, 552 (3d Cir. 2005) (citation and internal quotation omitted). Even if the Court would have decided differently, it is bound by the ALJ's decision if it is "supported by substantial evidence." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001) (citation omitted). The Court must "review the record as a whole to determine whether substantial evidence supports a factual finding." *Zirnsak v. Colvin*, 777 F.3d 607, 610 (3d Cir. 2014).

Even amid this deferential standard, the Third Circuit has explained that the court's review must be a qualitative exercise requiring a thorough examination of the ALJ's decision and the record:

> [The substantial evidence standard] is not . . . a talismanic or self-executing formula for adjudication; rather, our decisions make clear that determination of the existence *vel non* of substantial evidence is *not* merely a quantitative exercise. A single piece of evidence will not satisfy the substantiality test if the Secretary [of Health and Human Services] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion. The search for substantial evidence is thus a qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham.

*Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983) (citation omitted). It is, thus, necessary for ALJs to analyze all probative evidence and set out the reasons for their decisions. *Burnett*, 220 F.3d at 121. If the ALJ has not analyzed all probative evidence and has not sufficiently explained the weight given to the evidence, the decision is not supported by substantial evidence. *See Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) ("[T]o say that [the] decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." (citations omitted)). The ALJ must state both the evidence considered as well as the evidence rejected. *Cotter v. Harris*,

642 F.2d 700, 706-07 (3d Cir. 1981) ("Since it is apparent that the ALJ cannot reject evidence for no reason or the wrong reason, an explanation from the ALJ of the reason why probative evidence has been rejected is required so that a reviewing court can determine whether the reasons for rejection were improper." (internal citation omitted)).

On appeal Plaintiff bears the burden "of showing not merely that the Commissioner erred, but also that the error was harmful." *Romero v. Comm'r of Soc. Sec.*, No. 18-16806, 2020 WL 2301444, at *2 (D.N.J. May 8, 2020). "[W]hen appealing a decision at the first four steps, if Plaintiff cannot articulate the basis for a decision in [her] favor, based on the existing record, [s]he is quite unlikely to show that an error was harmful." *Id.*

## B.    Establishing Eligibility for DIB and SSI

To be eligible for DIB or SSI under the Act, a claimant must be unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than [twelve] months[.]" 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). For purposes of the statute, a claimant is disabled only if her physical or mental impairments are "of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423(d)(2)(A). A physical or mental impairment is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3).

Administrative regulations provide a five-step evaluation procedure to determine whether an individual is disabled. *See* 20 C.F.R. § 404.1520(a)(4). For the first step, the claimant must

establish that she has not engaged in any substantial gainful activity since the onset of her alleged disabilities. *Id.* § 404.1520(a)(4)(i). For the second step, the claimant must establish that she suffers from a "severe . . . impairment" or "combination of impairments." *Id.* § 404.1520(a)(4)(ii). The third step requires that the claimant provide evidence that her impairments are equal to at least one of the impairments listed in Appendix 1 of the regulations. *Id.* § 404.1520(a)(4)(iii). If the claimant demonstrates that she suffers from a listed impairment or that her severe impairment is equal to a listed impairment, she is presumed to be disabled and entitled to DIB benefits. *Id.*; 20 C.F.R. § 404.1520(d). If she cannot so demonstrate, the eligibility analysis proceeds to step four. *See* 20 C.F.R. § 404.1520(e).

Before considering step four of the sequential evaluation process, the ALJ must first determine the claimant's RFC. 20 C.F.R. § 404.1520(a)(4)(iv). In doing so, the ALJ must consider all of the claimant's impairments, including impairments that are not severe. *Id.*; SSR 96-8p, 61 Fed. Reg. 34474, 34477 (Jul. 2, 1996). Then, at step four, the ALJ determines whether the claimant's RFC permits her to resume previous employment. 20 C.F.R. § 404.1520(a)(4)(iv). If the claimant's RFC permits her to resume previous employment, the claimant is not "disabled" and thus not entitled to DIB benefits. *Id.*; 20 C.F.R. § 404.1520(f). If the claimant cannot continue in this line of work, the analysis proceeds to step five. *See* 20 C.F.R. § 404.1520(a)(4)(v). Importantly, the burden of persuasion rests with the claimant in the first four steps. *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 763 (3d Cir. 2009).

At the fifth step, the burden shifts to the Commissioner to demonstrate that the claimant can perform other work consistent with her medical impairments, age, education, past work experience, and RFC. *Id.*; 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1560. If the Commissioner cannot satisfy this burden, the claimant will receive Social Security benefits. 20 C.F.R. § 404.1520(g).

III.    **DISCUSSION**

Plaintiff alleges that the ALJ erred in his decision denying DIB and SSI because he failed to: (1) meaningfully consider Plaintiff's borderline personality disorder and paranoid personality disorder at Steps Two through Five, or properly analyze whether these psychiatric conditions meet or medically equal SSA Listing of Impairment ("Listing") 12.08; (2) make any pace related findings; and (3) adequately consider Plaintiff's subjective symptoms. (*See* Pl.'s Moving Br. 17, 26, 28.) The Court considers each contention in turn.

A.    **Plaintiff's Borderline Personality Disorder and Paranoid Personality Disorder**

Plaintiff asserts that the ALJ failed to consider Plaintiff's "borderline personality disorder" and "paranoid personality disorder" (together, the "Personality Disorders") at steps two through five[5] of the sequential evaluation process, "[d]espite medical records documenting these diagnoses." (Pl.'s Moving Br. 17-20.) The Court considers this argument below.

As an initial matter, Plaintiff did not list the Personality Disorders on her application for disability. (Pl.'s Moving Br. 7; AR 248-49 (listing "all of the physical or mental conditions (including emotional or learning problems) that limit [her] ability to work" as: (1) depression; (2) anxiety; (3) bipolar I; (4) ADHD; (5) PTSD; (6) endometriosis; (7) Reynaud's disease; (8) asthma; and (9) allergies).) Plaintiff also did not mention borderline personality disorder as a condition limiting her ability to work at her hearing before the ALJ, although she did mention paranoid personality disorder. (*See* AR 49 (evidencing Plaintiff stating she was diagnosed with "depression, anxiety, PTSD, bipolar, paranoid personality disorder, and [] ADHD").) Apparently based on this one mention of paranoid personality disorder, Plaintiff makes the generalized claim

---

[5] Although Plaintiff claims to challenge the ALJ's finding with respect to the Personality Disorders at steps two through five, Plaintiff's briefs only discuss steps two and three. (*See* Pl.'s Moving Br. 17-20; Pl.'s Reply 4-6.) As such, the Court limits its discussion to steps two and three.

in her moving brief that consideration of the Personality Disorders "would cause greater limitations in each of these criteria than what was outlined in the ALJ decision and could rise to a level of impairment." (Pl.'s Moving Br. 20.) This "generalized response" is not sufficient to warrant remand where "the administrative record indicates clearly that the ALJ relied on the voluminous medical evidence as a basis for his findings regarding her limitations and impairments," as further described below. *Rutherford*, 399 F.3d at 553 (rejecting plaintiff's request for remand where she "never mentioned obesity as a condition that contributed to her inability to work, even when asked directly by the ALJ to describe her impairments" and gave only a "generalized response" as to "how that factor would affect the five-step analysis").

Even if Plaintiff's one mention of paranoid personality disorder required the ALJ to undertake a full analysis of her Personality Disorders, the Court is not convinced remand is warranted, for the reasons explained below.

### 1.   *Step Two*

"It is well established that any omission of an impairment at step two is harmless error, provided that the ALJ determines that the claimant has at least one severe impairment and continues onto the subsequent steps of the sequential analysis." *Vanessa T-H. v. Comm'r of Soc. Sec.*, No. 23-2293, 2024 WL 1635685, at *4 (D.N.J. Apr. 16, 2024) (citing *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (2007)). Here, the ALJ found that Plaintiff had severe impairments during the relevant period and continued to step three, rendering any deficiency at step two harmless. (*See* AR 20 (listing Plaintiff's severe impairments: PTSD, anxiety disorder, bipolar disorder, ADHD, and endometriosis)); *Robert I. v. O'Malley*, No. 22-1892, 2024 WL 3102224, at *8 (D.N.J. June 24, 2024) (finding that although "the ALJ did not expressly consider [p]laintiff's mood disorder . . . at step two when identifying [p]laintiff's severe impairments," it

was harmless where "the ALJ did not deny benefits at that step," but "rather continued with the sequential analysis").

> **2.    Step Three**

The ALJ must consider the actual symptoms of an alleged impairment, and "any failure on the ALJ's part to . . . precisely name the severe impairment does not undermine the entire analysis, when ultimately the ALJ properly characterized the symptoms and functional limitations." *Burnside v. Colvin*, 197 F. Supp. 3d 705, 720 (M.D. Pa. 2015) (citing *Lambert v. Astrue*, No. 09-657, 2009 WL 425603, at *13 (W.D. Pa. Feb. 19, 2009)); *Phillips v. Barnhart*, 91 F. App'x 775, 780 (3d Cir. 2004) (citing *Petition of Sullivan*, 904 F.2d 826, 845 (3d Cir. 1990)) ("A diagnosis of impairment, by itself, does not establish entitlement to benefits under the Act.").

In her moving brief, Plaintiff repeatedly identifies paranoia as a symptom of the Personality Disorders. (*See, e.g.*, Pl.'s Moving Br. 10, 11, 18.) In one instance, the ALJ did mention Plaintiff's paranoid personality disorder when crediting Plaintiff's own testimony. (AR 24-25.) Even without otherwise mentioning the name of the disorder, the ALJ considered Plaintiff's paranoia at step 3 by referencing paranoia explicitly and citing to multiple medical examinations that included entries related to Plaintiff's paranoia. (*See id.* at 22, 26.) The ALJ also found the findings of state agency psychological consultant Helen Feldman generally persuasive, and Feldman explicitly considered Plaintiff's paranoia. (*Id.* at 28 (noting "[a]ctivities of daily living indicated panic attacks and paranoia").) As such, the Court is satisfied that the ALJ did properly consider the symptoms of the Personality Disorders even if he did not necessarily reference them by name. *Burnside*, 197 F. Supp. 3d at 719 ("[T]he outcome of the case depends on the demonstration of the functional limitations of the disease or impairment rather than the mere diagnosis of the disease or name of the impairment.").

Even if the ALJ had not adequately considered Plaintiff's symptoms, the burden remains on Plaintiff to show that this error was harmful. Specifically, "[Plaintiff] bears the burden to 'provide sufficient medical evidence . . . to show that her impairment is equal in severity to a listed impairment.'" *Collado v. Comm'r of Soc. Sec.*, No. 19-13458, 2020 WL 5939793, at *4 (D.N.J. Oct. 6, 2020) (first alteration in original) (quoting *Burnett*, 220 F.3d at 120 n.2). In short, Plaintiff "must show how any error in the step-three analysis 'would "affect the outcome of the case."'" *Id.* at *5 (quoting *Rutherford*, 399 F.3d at 553) (finding that it is insufficient for the plaintiff to "'repeatedly state[] that [her] circumstances were not compared to the listings' without an explanation of how 'an actual discussion of her impairments would lead to the conclusion that she was disabled at step three.'" (first alteration in original) (quoting *Woodson v. Comm'r of Soc. Sec.*, 661 F. App'x 762, 766 (3d Cir. 2016))). "Accordingly, when [a plaintiff] fails to provide record citations or discussion of the listing and merely contends that the ALJ's findings are inadequate, the Third Circuit has regularly affirmed the ALJ's findings." *Id.* at *4 (citing *Garrett v. Comm'r of Soc. Sec.*, 274 F. App'x 159, 162-63 (3d Cir. 2008); *Creegan v. Comm'r of Soc. Sec.*, 142 F. App'x 567, 569 (3d Cir. 2005)).

In her moving brief, Plaintiff fails to provide proper citations to the record that demonstrate that limitations caused by the Personality Disorders equate to a listed impairment. (*See* Pl.'s Moving Br. 19-20.) Instead, Plaintiff states that the Personality Disorders "would cause greater limitations in each of these criteria than what was outlined in the ALJ decision and could rise to a listing level impairment." (*Id.* at 20.) This allegation fails to "present medical findings equal in severity to all the criteria for the one most similar listed impairment[,]" and therefore her argument is without merit. *Sullivan v. Zebley*, 493 U.S. 521, 531 (1990); *see also Morris v. Comm'r of Soc. Sec.*, No. 19-8473, 2020 WL 6580778, at *3 (D.N.J. Nov. 10, 2020) (stating that the plaintiff "bears

the burden of proof at step three" and denying the plaintiff relief because "[p]laintiff did not even attempt to demonstrate that the medical findings are equal in severity to all the criteria for any [l]isting" and "[t]he Commissioner bears no burden of disproof of equivalence").

### 3.    *SSA Listing 12.08*

Next, Plaintiff argues that at step three the ALJ failed to properly analyze whether Plaintiff's conditions "meet or medically equal SSA listing 12.08 for the" Personality Disorders. (Pl.'s Moving Br. 20-26.) The Commissioner argues in opposition that the ALJ properly analyzed the Part B criteria of Listings 12.04, 12.06, 12.11, and 12.15, which are identical to 12.08. (Def.'s Opp'n Br. 14-22, ECF No. 9.) The Court considers the arguments below.

"At the third step in the sequential evaluation process, a claimant will be considered disabled where a claimant has an impairment or combination of impairments that meet(s) durational requirements and meet(s) or equal(s) the criteria for Listed Impairments." *Keesha D. v. Comm'r Soc. Sec.*, No. 20-15183, 2023 WL 2713842, at *6 (D.N.J. Mar. 30, 2023) (citing 20 C.F.R. § 404.1520(a)(4)(iii)). "In making a determination at step three, an ALJ should set forth the evidence he found persuasive, the evidence he rejected, and his reasoning." *Walker v. Comm'r Soc. Sec.*, No. 18-17172, 2020 WL 1531384, at *3 (D.N.J. Mar. 31, 2020) (citing *Cotter*, 642 F.2d at 705-07). In doing so, however, the Third Circuit does not require "the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Keesha D.*, 2023 WL 2713842, at *6 (quoting *Woodson*, 661 F. App'x at 765-66) (internal quotation marks and citation omitted).

Under Listing 12.08, Plaintiff must satisfy all the criteria listed in Part A *and* Part B.[6] *See* 20 C.F.R. Pt. 404, Subpt. P, App.1 § 12.08. The ALJ did not consider Listing 12.08 in his decision, but he did evaluate listings 12.04, 12.06, 12.11, and 12.15, (AR 21-24), which require the identical "**Part B**" assessment criteria as Listing 12.08. *See* 20 C.F.R. Pt. 404, Subpt. P, App.1 §§ 12.04, 12.06, 12.11, 12.15; *see also Dercole v. Saul*, No. 18-12887, 2021 WL 1399861, at *11 (D.N.J. Apr. 14, 2021) ("Paragraph B of Listings 12.04 and 12.06 are identical to Paragraph B in Listing 12.08."). As the analysis of Part B under §§ 12.04, 12.06, 12.11, 12.08, and 12.15 is exactly the same, the ALJ's assessment of assessment criteria would be the same no matter the listing. *See Kerdman v. Colvin*, No. 13-04216, 2014 WL 3783872, at *9 (D.N.J. July 30, 2014), *aff'd*, 607 F. App'x 141 (3d Cir. 2015) (finding that the assessment criteria under listings 12.04 and 12.06 are identical and therefore any analysis under those listings would also be the same).

Part B assessment criteria requires "[e]xtreme limitation of one[] or marked limitation of two" of the following: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; or (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P, App.1 § 12.08. Plaintiff challenges the ALJ's findings of a moderate limitation in interacting with others and adapting or managing oneself. (Pl.'s Moving Br. 24-26.)

In opposition to these findings, Plaintiff cites to specific evidence throughout the record that the ALJ "should have considered." (Pl.'s Moving Br. 24-26.) The ALJ does not, however, need to "cite all evidence a claimant presents." *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008). Specifically, it is not necessary for the ALJ to "undertake an exhaustive discussion

---

[6] The Court does not discuss the Part A criteria since Plaintiff needed to satisfy both Part A and Part B criteria to satisfy the Listing. As discussed below, the ALJ's finding that Part B was not satisfied was supported by substantial evidence.

of all the evidence" where the court can determine "that there is substantial evidence supporting the Commissioner's decision[.]" *Hernandez v. Comm'r of Soc. Sec.*, 89 F. App'x 771, 773-74 (3d Cir. 2004). In evaluating whether the ALJ has discharged his duty, it is not the Court's role to re-weigh the evidence, either against or in favor of the plaintiff, or to "impose [its] own factual determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011) (citing *Richardson*, 402 U.S. at 401). Importantly, "substantial evidence does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Johnson*, 529 F.3d at 200 (quoting *Hartranft*, 181 F.3d at 360).

In support of the ALJ's finding of a moderate limitation in interacting with others, the ALJ considered: (1) hospital records from Plaintiff's admission to Hunterdon Medical Center Emergency Department ("Hunterdon") describing paranoia and lack of family support, (AR 22 (citing Ex. 3F)); (2) office treatment records from Princeton House Behavioral Health Outpatient ("Princeton House") indicating that Plaintiff was opening up in a group setting but still was anxious, irritable, and rigid, among other things, (*id.* (citing Ex. 6F)); (3) a mental status examination noting Plaintiff had, *inter alia*, appropriate affect and coherent speech (*id.* (citing Exs. 14F, 17F)); (4) a physical examination where Plaintiff "appeared to be cooperative" (*id.* (citing Ex. 10F)); and (5) a mental status examination where Plaintiff had variable eye contact and poor impulse control but "her affect was in full range" and she spoke in full sentences, (*id.* (citing Ex. 11F)).

In support of the ALJ's finding of a moderate limitation in adapting or managing oneself, the ALJ considered: (1) a discharge summary indicating Plaintiff had "good results for mood stabilization" on medication, denied suicidal or homicidal ideation, and was not a threat to herself

or others (*id.* (citing Ex. 3F, 11F)); (2) progress notes showing that Plaintiff would have sad and anxious moods and fair or poor insight/judgment, but would also have euthymic moods (*id.* (citing Exs. 7F, 13F, 14F)); (3) mental status examination detailing Plaintiff's anxious mood and "somewhat poor" insight and judgment; and (4) Plaintiff's testimony that she tried to take her dog out, go to therapy, and engage in self-care depending on how she was feeling, (*id.*).

The Court finds that the evidence described above is substantial and supports the ALJ's findings as to interacting with others and adapting or managing oneself at step three. Plaintiff's contention that the ALJ failed to analyze her conditions under Listing 12.08 is therefore an insufficient basis for reversal.

### B.    Pace Limitations

Plaintiff contends that the ALJ erred by not including any pace limitation in his RFC finding because he found Plaintiff has a moderate limitation in concentrating, persisting, and maintaining pace in step three. (Pl.'s Moving Br. 26-28.) The Commissioner responds that the ALJ's analysis could be reasonably discerned, was supported by adequate evidence, and Plaintiff does not actually point the Court to other evidence in the record demonstrating that a pace limitation was required. (Def.'s Opp'n Br. 22-26.)

#### 1.    *Legal Standard*

"[A]n ALJ's RFC determination need not use 'any particular language' nor any 'incantations . . . simply because a particular finding has been made at steps two and three.'" *Daniel M. v. Comm'r of Soc. Sec.*, No. 21-10533, 2022 WL 2952912, at *5 (D.N.J. July 26, 2022) (quoting *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019)). In the Third Circuit, "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.'" *Hess*, 931 F.3d.

at 211 (upholding "simple tasks" limitation based on evidence of plaintiff's ability to perform daily living tasks, mental status reports that revealed plaintiff could function effectively, and plaintiff's past work as a part-time dishwasher); *see also Robert I.*, 2024 WL 3102224, at *12 (holding the ALJ offered a "valid explanation" for his finding where the ALJ expressly relied upon "evidence of [p]laintiff's daily activities," "[p]laintiff's mental health functioning was generally stable and he did not require any higher level of care, his medication was effective, and his mental status examinations were largely within normal limits").

### 2. *Analysis*

The ALJ found a "moderate" limitation in concentrating, persisting, or maintaining pace at step three. (AR 22-23.) The ALJ then found Plaintiff's RFC to be:

> limited to *simple tasks in a routine work environment*; no more than occasional interaction with supervisors, but would be able to have frequent interaction during a 30-day training period; can work in close proximity to others, but only with brief, incidental interaction with others and no tandem job tasks requiring cooperation with other workers to complete the task; no interaction with the general public; and limited to *low stress work, which is defined as routine work with no more than occasional changes in the work*.

(*Id.* at 27 (emphasis added).) To support this finding, the ALJ considered Plaintiff's testimony, medical records from Plaintiff's time at Hunterdon and Princeton House, and a report from a licensed clinical social worker and consultative examiner. (*See* AR 24-27 (reviewing Plaintiff's diagnoses and response to medication and treatment, among other things).) One such report indicates that Plaintiff "has fluctuations in her mental health status, but even during an episode of anxiety or depression, she is able to care for herself and her dog." (*Id.* at 26-27.) The consultative examiner also found that Plaintiff "went out to go get food and quick things" and "appeared to be able to follow simple and multiple-step directions." (*Id.* at 27.)

17

The ALJ also considered reports from two state agency psychological consultants that the ALJ found consistent with other evidence on the record and therefore persuasive. (*Id.* at 28.) These reports found moderate limitations in Plaintiff's concentrating, persisting, or maintaining pace, but also "opined that based on available medical evidence of record, the [Plaintiff] could complete simple instructions and could relate and adapt in simple work-like settings," and Plaintiff "seemed to be responding to medication, with the most recent mental status examination generally intact." (*Id.*)

Moreover, the ALJ not only limited Plaintiff to "simple tasks," but added that Plaintiff needs to be in a "routine work environment" and perform "low-stress work, which is defined as routine work with no more than occasional changes in the work." (*Id.* at 27.) These additional limitations account for concentration, persistence, and pace. *See Tamara H. v. Kijakazi*, No. 21-19353, 2022 WL 16570646, at *6 (D.N.J. Nov. 1, 2022) ("[T]he limitation[] of 'work in a routine environment with few changes; [and] mak[ing] simple work decisions' are indicative of the moderate deficiencies in concentration and persistence).

In sum, the Court finds substantial evidence in the record to support the ALJ's RFC determination with respect to Plaintiff's mental impairments.

### C.    Plaintiff's Subjective Complaints

Plaintiff argues that the ALJ did not adequately consider the symptoms of Plaintiff's endometriosis, particularly her subjective complaints, under 20 C.F.R. §§ 416.929 and 404.1529. (Pl.'s Moving Br. 28-31.) The Commissioner argues that the ALJ adequately considered Plaintiff's

subjective complaints as required by the regulations, and his decision is adequate under the substantial evidence standard. (Def.'s Opp'n Br. 26-30.)

### 1. Legal Standard

The relevant regulations require a two-step process to evaluate Plaintiff's subjective complaints. *See* 20 C.F.R. § 404.1529. First, the ALJ must "determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the [] alleged symptoms." SSR 16-3p, (Mar. 16, 2016). Second, if the ALJ finds that such an impairment exists, the ALJ must "evaluate the intensity and persistence" of the symptoms and the effects that those symptoms have on the individual's ability to work. *Id.*

While a plaintiff will not be able to establish disability by subjective complaints alone, such complaints of pain are to be afforded "great weight, especially when it is supported by competent medical evidence." *Podedworny v. Harris*, 745 F.2d 210, 217 (3d Cir. 1984) (citing *Dobrowolsky*, 606 F.3d at 409). The ALJ "can reject such claims if he does not find them credible" and if he adequately discusses the reasons behind his findings. *Schaudeck v. Comm'r of Soc. Sec. Admin.*, 181 F.3d 429, 433 (3d Cir. 1999).

### 2. Analysis

Here, the ALJ followed this two-step evaluation process. (AR 24-29.) Under step one, the ALJ found that Plaintiff's endometriosis was a medically determinable impairment, but under step two, that Plaintiff's statements "concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." (*Id.* at 25.)

In his decision, the ALJ put forth Plaintiff's testimony about her endometriosis: "Endometriosis affects her every month, and she calls out from work. Four to five days a month,

she is in severe pain. Prescription medications do not help with the pain, and doctors are worried about prescribing stronger medication." (*Id.*) The ALJ found, however, that Plaintiff's statements were inconsistent with "the medical evidence and other evidence in the record." (*Id.*) In particular, the ALJ took note of Plaintiff's medical records that described her as pain free; spending time exercising and playing with her pets; increasing her use of distress tolerance skills; as well as a normal physical exam from an obstetrician/gynecologist; and noting that Plaintiff has tried many types of treatment for endometriosis but was not ready for surgical management. (*Id.* at 27.) The ALJ also considered the findings of two state agency medical consultants that he found generally persuasive and consistent with other evidence of record. The first consultant found: (1) no environmental limitations; (2) that Plaintiff's endometriosis was reported as disabling in pain once per month; (3) Plaintiff had a laparoscopy with no follow-up visits since 2019; (4) no relevant medications were listed; (5) Plaintiff did not have chronic anemia; and (6) "there was no evidence that this was chronic or severe now." (*Id.* at 29.) The second consultant similarly found no environmental limitations. (*Id.*) The ALJ nonetheless noted that "as a precaution in consideration of the claimant's testimony as to chronic pain from endometriosis, [he] found endometriosis to be a severe impairment" and "found a light residual functional capacity." (*Id.*)

Plaintiff maintains that the ALJ inadequately considered all of the symptoms of Plaintiff's impairment of endometriosis. Specifically, Plaintiff contends that the ALJ did not consider that: (1) she reported the pain to her health providers; (2) she reported pain in her abdomen and back when menstruating that lasts about one week; (3) her treatment records at Princeton House mentions the pain, and it impacted her attendance at the program; (4) she underwent a procedure to address the pain but still experienced pain afterwards, and (5) her pain is debilitating and

prevents her from performing her [activities of daily living]. (Pl.'s Moving Br. 29-30.) Plaintiff's arguments regarding the ALJ's alleged errors are not persuasive.

Many of the documented symptoms that Plaintiff points to in the list above include her own reports of pain to health providers. "[A] medical source does not transform the claimant's subjective complaints into objective findings simply by recording them in his narrative report." *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 879 (3d Cir. 2005) (citing *Craig v. Chater*, 76 F.3d 585, 590 n.2 (4th Cir. 1996)); *see also Morris v. Barnhart*, 78 F. App'x 820, 824-25 (3d Cir. 2003) (noting "the mere memorialization of a claimant's subjective statements in a medical report does not elevate those statements to a medical opinion" (citation omitted)). "There is no requirement that the ALJ discuss in his opinion every tidbit of evidence included in the record." *Hur v. Barnhart*, 94 F. App'x 130, 133 (3d Cir. 2004). Moreover, if there is substantial support for the ALJ's decision, remand is not warranted simply because Plaintiff "points to evidence that might have supported a contrary conclusion by the ALJ . . . ." *Gunn v. Kijakazi*, 705 F. Supp. 3d 315, 326 (E.D. Pa. Dec. 5, 2023).

Ultimately, it is not the Court's role to re-weigh the evidence, either against or in favor of Plaintiff, or to "impose [its] own factual determinations." *Chandler*, 667 F.3d at 359 (citing *Richardson*, 402 U.S. at 401). Even if the Court would have decided differently, it is bound by the ALJ's decision if it is "supported by substantial evidence." *Fargnoli*, 247 F.3d at 38. Here, the Court finds that the ALJ's conclusion as to Plaintiff's subjective complaints is supported by substantial evidence because the ALJ sufficiently considered Plaintiff's testimony, medical records, and state agency medical consultants while explaining why he found certain evidence persuasive. (*See* AR 24-30.)

IV.    <u>**CONCLUSION**</u>

      For the reasons outlined above, the Court affirms the Commissioner's decision. An Order consistent with this Memorandum Opinion will be entered.


                                                           _____

                                                           MICHAEL A. SHIPP
                                                           UNITED STATES DISTRICT JUDGE